**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| BLACK WARRIOR RIVER-KEEPER, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No.:  2:19-cv-00344-JHE |
| v. | ) ) | |
| ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Defendants United States Environmental Protection Agency ("EPA"), Acting EPA Administrator Andrew Wheeler, and Acting EPA Regional Administrator for Region 4 Mary Walker (collectively "Defendants") move to voluntarily remand part of this action to the EPA without Vacatur.  (Doc. 30).  Plaintiff Black Warrior River-Keeper, Inc. ("River-Keeper" or "Plaintiff") opposes the motion and urges the court to move to the summary judgment phase of this action.  (Doc. 32).  The motion is fully briefed and ripe for review.  For the reasons stated below, the motion (doc. 30) is **DENIED**.

## I. Background

Plaintiff filed its complaint pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging the EPA's decision to approve the State of Alabama's 2018 list of impaired waters under § 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d).  (Doc. 1).  Plaintiff alleges the EPA approved the State of Alabama's delisting of certain impaired waters in the Black Warrior basin from its 2018 § 303(d) list without requiring supporting evidence that these waters now meet applicable standards and without considering all relevant information.  (*Id.* at 1-2).

On February 11, 2018, Alabama (through its Department of Environmental Management ("ADEM")) issued its 2018 Draft § 303(d) List. (Doc. 1 at 9). ADEM proposed delisting several streams in the Black Warrior basin, including two segments of Lost Creek that had been included in previous § 303(d) Lists as being impaired for siltation (habitat alternation). (Doc. 20-11 at 73; EPA 2871). To support the delisting decision for the two segments of Lost Creek, ADEM relied upon the following: (1) excerpted water chemistry data from Lost Creek monitoring stations LOSW1, LOSW2, LOSW4, and LOSW5 that is found in EPA's Water Quality Portal; (2) habitat assessments from stations LOSW1 and LOSW5; and (3) macroinvertebrate assessments from LOSW1 and LOSW5. (*Id.* at 71; EPA 2869). The habitat and macroinvertebrate assessments were taken directly from the 2012 Lost Creek Hwy. 78 Monitoring Study (doc. 22-1 at 2-3) (for Segment 1) and the 2012 and 2013 Lost Creek Hwy. 69 Monitoring Study (doc. 22-1 at 5-6) (for Segment 2) (collectively, "Monitoring Studies").

Plaintiff alleges ADEM "selectively cut and pasted information from the Monitoring Studies" in its delisting decision provided to the EPA. (Doc. 22 at 3) (citing doc. 20-11 at 77-80; EPA 2875-2878, figs. 5-8). Plaintiff further contends EPA did not include the Monitoring Studies or complete water chemistry data for monitoring stations LOSW1, LOSW2, LOSW4, and LOSW5 in the Administrative Record ("AR") compiled in this case, even though ADEM explicitly relied on excerpted data from these stations to delist Lost Creek. (*Id.* at 3-4) (citing doc. 20-11 at 76-79, 83; EPA 2874-2877, 2881 & doc. 22-1 at 8-11).

Specifically, on March 13, 2018, Plaintiff submitted a copy of its ADEM comment letter to the EPA, objecting to the delisting of Lost Creek and Big Yellow Creek. (Doc. 20-9 at 87-99; EPA 2540-2552). In its electronic comment, Plaintiff discussed how the Monitoring Studies that ADEM selectively cited in its delisting decision do not support delisting and provided links so

that EPA could view the two Monitoring Studies and verify its analysis and conclusions. (*Id.* at 89 n.1; EPA 2542 n.1). Plaintiff contends the Monitoring Studies conclude the two segments of Lost Creek should remain on the §303(d) List and that ADEM omitted those conclusions from the delisting decision approved by the EPA. (Doc. 22 at 4).

Plaintiff also posits that in the same comments it discussed why ADEM's "poorly explained switch in 2018 to a metric of turbidity and total suspended solids ("TSS")" (doc. 20-11 at 73-75; EPA 2871-2873), "was inappropriate to measure the siltation and habitat impairment in Lost Creek." (Doc. 22 at 4). ADEM's previous decisions evaluating Lost Creek's impairment for siltation used a water chemistry metric of total dissolved solids and concluded the stream should remain on the § 303(d) List. (Docs. 22 at 4-5 & 22-1 at 3, 6).

Pursuant to the scheduling order, on August 1, 2019, Defendants filed the administrative record with an agency certification.[1] (Doc. 20). Thereafter, Plaintiff moved to complete or supplement the administrative record. (Doc. 21). On October 9, 2019, the undersigned entered a memorandum opinion and order granting Plaintiff's motion to the limited extent that the court would consider the Monitoring Studies as extra-record evidence, regardless of whether they are made part of the record. (Doc. 29).

---

[1] Unlike cases that require discovery, as a general matter, this action must proceed based on an administrative record submitted by Defendants and be decided on summary judgment. *See Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), abrogated in part on other grounds, *Califano v. Sanders*, 430 U.S. 99 (1977) (directing courts to confine their review of challenged agency decisions to "the full administrative record that was before the Secretary at the time he made his decision.").

On October 18, 2019, Defendants moved to voluntarily remand part of this action without vacatur, only remanding as to its Lost Creek delisting determinations. (Doc. 30). Plaintiff opposes remanding without vacatur. (Doc. 32).

## II. Standard of Review

While "vacatur . . . is the ordinary APA remedy," *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1369 (11th Cir. 2008) (Kravitz, J. concurring in part and dissenting in part), remand without vacatur is permitted. *Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015). To decide whether an agency's action should be remanded without vacatur, a court must balance the equities. *Id.* A court must consider "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Id.* (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C.Cir.1993).

## III. Analysis

When considering whether to remand an agency action without vacatur, the court must balance the equities and consider "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Black Warrior Riverkeeper*, 781 F.3d at 1290 (citations omitted). "[W]hen equity demands, [the challenged agency action] can be left in place while the agency follows necessary procedures to correct its action." *Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir 1995)). The Eleventh Circuit has explained that remand without vacatur is appropriate "where it is not at all clear that the agency's error incurably tainted the agency's decisionmaking process." *Black Warrior Riverkeeper*, 781 F.3d at 1290.

## A. The Seriousness of the Determination's Deficiencies

The first consideration of the Eleventh Circuit's two-factor test to balance the equities is for the court to consider the seriousness of the determination's deficiencies. *See Black Warrior Riverkeeper*, 781 F.3d at 1290. To consider seriousness, the court must evaluate the extent of doubt as to whether the agency chose correctly. *Id.* Defendants argue that remand without vacatur is warranted because "it is far from clear that EPA's approval was improper" because it considered "siltation data" in its initial decisionmaking process. (doc. 30-1 at 10). This is not the entire picture. Plaintiff contends the Monitoring Studies underlying the delisting decision explicitly conclude that the two segments of Lost Creek remain impaired. (Doc. 32 at 5 (citing doc. 22-1 at 3, 6)). Yet, the EPA selectively cited data from these studies as primary support for its decision. Plaintiff also presents evidence that EPA failed to consider readily available total dissolved solids data, which supported a finding of continued impairment (docs. 1 at ¶¶ 39-40 & 1-1 at 14), and alleges the EPA failed to question or justify Alabama's switch from total dissolved solids to total suspended solids as a metric for impairment (docs 1 at ¶¶ 41-42). Plaintiff alleges, and presents evidence to support that, EPA committed "a clear error in judgment" when it failed to consider this relevant data and information, despite being presented with it during public comments. As such, the seriousness of these deficiencies weighs against remand without vacatur.

## B. The Disruptive Consequences

The second consideration under the Eleventh Circuit's two-factor test is for the court to contemplate the disruptive consequences of an interim change that itself may be changed. *See Black Warrior Riverkeeper*, 781 F.3d at 1290. Defendants posit that vacating the EPA's approval of the State's delisting decision would be disruptive to the § 303(d) program and permitting program without any corresponding benefit to Plaintiff. (Doc. 30-1 at 10). Defendants explain

that, because EPA anticipates conclusion to its reconsideration process within thirty days, vacatur could result in the "rapid reclassification" of these segments of Lost Creek from unlisted, to listed, and back to unlisted within a month. (*Id.*). Defendants conclude that this would risk creating "unnecessary disruption and confusion for the public and regulated community," and that vacatur would not provide any benefit "because [thirty] days is not enough time to result in any change in legal requirements through the modification of permits or TMDLs. (*Id.*).

Defendants assertions are conclusory and unsupported. As other courts have noted, abstract policy arguments and conjectural claims are insufficient to show disruptive consequences. *See e.g., PEER v. U.S. Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, 3-4 (D.D.C. 2016); *Bldg. Indus. Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 106 (D.D.C. 2002).

Among other things, the Clean Water Act charges the EPA with the responsibility to oversee the implementation and protection of water quality standards by the states. 33 U.S.C. § 1313(a)-(c). These water quality standards are designed "To protect the public health or welfare, enhance the quality of water and serve the purposes" of the Clean Water Act. 40 C.F.R. § 131.3(i). Where water quality standards are not being met, it is EPA's responsibility to include oversight of the states' development of the §303(d) List of impaired waters. 40 C.F.R. § 130.7. Absent court action, the buck stops with the EPA to ensure that the states properly document and support decisions to list or not to list waters as impaired. 40 C.F.R. § 130(b)(6).

Here, there is evidence to support the Plaintiff's allegations that EPA failed to exercise these oversight responsibilities. The APA directs that a reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is the remedy Plaintiff requests. When balanced, the equities weigh against granting Defendants' request

to remand without vacatur. In addition to the above-described considerations, sending only the Lost Creek portion of the case back to the EPA without vacatur would result in an unnecessary bifurcation of this case. Furthermore, EPA has had the complete Monitoring Studies and has known of their relevance since EPA received Plaintiff's public comment. Nevertheless, EPA only now, on the eve of summary judgment briefing requests to take another look at its decision. If the court decides that the EPA's actions were arbitrary and capricious at summary judgment, the EPA must then fully address the critical factual and legal failings on remand. In that situation, vacatur would be necessary for EPA to conduct its analysis anew, with an open mind – rather than permitting EPA to reevaluate and justify maintaining the status quo.

### IV. Conclusion

For the reasons stated above, Defendants' motion (doc. 30) is **DENIED**. The parties are to submit a proposed summary judgment briefing schedule no later than **November 15, 2019**.

DONE this 8th day of November, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE